Case 4:23-cv-03501   Document 48   Filed on 02/14/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
February 16, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK HAMILTON, | § § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 23-3501 |
| | § | |
| NORTHSTAR ENERGY SERVICES, INC., | § § § | |
| | § | |
| Defendant. | § § § | |

**MEMORANDUM AND OPINION**

This is a wage-and-hour dispute brought as a collective action under the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The plaintiff, Mark Hamilton, moves for FLSA collective identification and issuance of notice on behalf of himself and a group of designers who used Computer-Aided Design software to perform tasks at NorthStar Energy Services. (Docket Entry No. 27 at 2). The defendant, NorthStar, argues that the members of proposed class are not similarly situated, and that notice, and thus certification, is improper. (Docket Entry No. 40 at 2).

Hamilton requests the following relief: (1) to define similarly situated employees for a collective action for unpaid overtime wages under § 216(b), on behalf of all current and former designer employees of NorthStar who, in the past three years, were paid by the hour or submitted their hours worked on a regular basis, but who were not paid one and one-half their regular rate of pay for every hour worked in excess of forty hours in the work week; (2) to require NorthStar to identify all those who are similarly situated by providing their contact information within 14 days; and (3) to allow plaintiffs' counsel to send notice to putative class members, and; (4) to approve a

60-day opt-in period, with a reminder sent 30 days into the opt-in period. (Docket Entry No. 27 at 2-3).

NorthStar contends that notice to the putative class that Hamilton proposes is improper because: (1) the proposed collective action employees are not similarly situated; (2) Hamilton has not met his burden of showing that there are similarly situated workers to proceed on a collective basis; and (3) Hamilton's proposed definition is not limited to similarly situated employees.

Based on a careful review of the pleadings, the motion, response, reply, supplemental briefing, and the applicable law, the court denies the motion for FLSA collective identification and notice as Hamilton proposes. However, the court believes that collective identification and issuance of notice to certain narrow sub-classes of Hamilton's proposed class may be appropriate. The reasons for these rulings are explained below.

I.   **Background**

NorthStar provides engineering, design, procurement, and construction services to the chemical, petrochemical, power, and oil and gas industries. Hamilton alleges that NorthStar hires at least four kinds of employees who work as designers using Computer-Aided Design software ("CAD") to design layouts or plans: piping designers; instrumentation and electrical designers; survey designers; and civil-structural designers. (*Id.*). Each position within all four categories of design discipline has a grade between I and IV. (*Id.*).

Hamilton filed his original complaint on September 18, 2023. (Docket Entry No. 1). Since then, six additional plaintiffs—Justin Shad, Josue Pizana, Ronald Davis, Bradly Robberson, Rhys Els and David Giuseppetti—have opted into the litigation. Each of the putative class members either had a different position at NorthStar, or a different grade of the same position. (Docket Entry No. 40 at 3). Each additional putative plaintiff claims that they frequently worked over 40

hours in a week but did not receive time-and-a-half pay for overtime hours. (Docket Entry No. 39 at 3). The putative plaintiffs further allege that NorthStar paid each of its designers this way, in violation of the FLSA. (*Id.*). NorthStar asserts that the designers are exempt from the overtime provisions of the FLSA because they are salaried, not hourly, workers. (Docket Entry No. 30 at 3).

Hamilton's original motion to certify described the proposed class as comprising "all current and former Senior Piping Designers." (Docket Entry No. 19 ¶ 2). However, to account for the different positions held by the opt-in plaintiffs, Hamilton filed an amended motion to certify broadening the collective action to encompass "[a]ll current and former designer employees of NorthStar."

## II. The Legal Standard

The FLSA requires covered employers to pay nonexempt employees for overtime hours, at a rate of one and one-half times their hourly rate. *See* 29 U.S.C. § 207(a). Section 216(b) provides employees a cause of action against employers who violate § 207. Under § 216(b), employees may proceed in a collective action when they are "similarly situated." The Fifth Circuit has provided guidance for assessing whether potential collective action members in FLSA suits are "similarly situated" in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit explained that district courts should "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 439. Only then can the district court determine whether to issue notice. *Id.* at 434. The court has discretion to order targeted discovery to determine whether to issue notice to potential plaintiffs. *Id.* at 439. "The bottom line is that the district court has broad, litigation-management discretion [in class certification]." *Id.* at 443.

3

*Swales* looked to two principles to determine how a court should proceed in determining whether to issue notice: "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may 'facilitate[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at 434. "These are the only binding commands on district courts." *Id.* *Swales* emphasizes that a plaintiff suing as a representative has the burden of showing that the plaintiff and the proposed opt-ins are similarly situated. *Id.* at 443 n.65.

When "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted. *Id.* at 441–42. In *Swales*, the Fifth Circuit reaffirmed that certification depends on "whether merits questions can be answered collectively." *Id.* It also reaffirmed that the certification decision should be made "as early as possible." *Id.* There should be "[n]o judicial thumbs (or anvils) on the scale" related to the merits of the case at the certification stage. *Id.* at 436.

**III.   Analysis**

The question is whether Hamilton and the other CAD designers are similarly situated. Hamilton argues that the court should conditionally certify the class and issue notice for the following reasons: (1) Hamilton has shown that he and other employees at NorthStar who worked as designers are similarly situated because they are required to use the same timekeeping system for logging worked hours and are paid hourly based on hours worked; (2) the primary duties of a CAD designer do not meet any overtime exemptions recognized by FLSA; (3) each designer that NorthStar employed had the same or similar primary job duty, was paid by the hour for any hours beyond 40 hours in a given work week, and was not paid overtime for any hours beyond 40 hours,

4

and; (4) without the requested authorized notice, putative class members would never learn about this case and their right to participate, leading to the expiration of their claims due to the FLSA's statute of limitations. (Docket Entry No. 27 at 3).

Hamilton contends that the similarities between members of the proposed class predominate over their differences. Each worked for NorthStar. (Docket Entry No. 43 at 1). Each had "the primary job duty of using computer aided design (CAD) software to design layouts or plans … which must be reviewed and approved by more qualified professionals such as project managers or engineers, before being integrated into client deliverables." (Docket Entry No. 39 at 2). Hamilton asserts that "each [CAD designer] was paid on an hourly, not salary, basis," and was "required to log their work hours on an Excel timesheet and submit weekly," and would not be paid if they failed to submit an hourly time log. (*Id*. at 2-3).

NorthStar contends that the differences in the levels of plaintiffs' education and work experience, the specifics of plaintiffs' job duties and level of discretion exercised in completing their work, and varying levels of compensation, preclude conditional certification. (Docket Entry No. 40 at 4). Specifically, NorthStar asserts that Shad, Pizana, and Els all had obtained four-year college degrees before starting at NorthStar; Hamilton, Davis, Robberson, and Giueseppeti did not have four-year degrees when they began their employment with NorthStar. (Docket Entry No. 40 at 4-5). NorthStar also asserts that each of the plaintiffs joined NorthStar with varying levels of prior employment experience. (*Id*. at 5). Els, Davis, Shad and Robberson all had 20 years or more of design experience before joining NorthStar; while Giuseppetti, Hamilton, and Pizana each had 15 years of design experience or less before joining NorthStar. (*Id.* at 5-6). NorthStar notes that Els and Davis "obtained their experience and training during the pre-CAD and CAD eras, and that

5

they initially learned about drafting and piping design concepts with pen and paper that eventually translated and was relied upon, to design piping systems in CAD while at NorthStar." (*Id*. at 6).

NorthStar also points to the fact that the proposed class encompasses four different disciplines of designers, including piping, instrumentation and engineering, civil/structural, and survey. The proposed class also encompasses eight different levels of seniority, including Designers 0-III, Senior Designers 0-III, and Design Leads/Supervisors, within each discipline. (*Id*. at 6-7). NorthStar also highlights the distinct duties of designers within each discipline and across all grades. Each of the seven plaintiffs conceded in their depositions that they could not perform the primary duties of the designers in the other disciplines. (*Id*. at 7-8). NorthStar argues that the designers had different supervisors based on their disciplines, and that the job duties and level of discretion exercised by the designers varied greatly depending on their discipline, seniority, and experience. (*Id*. at 8-9). While some designers in the proposed class retained the ability to make design recommendations to NorthStar's engineers, others could only follow the instructions of engineers at all times. (*Id*. at 9-10). NorthStar contends that even for designers within the same discipline and grade, the ability to exercise professional judgment varied significantly. (*Id*. at 11).

NorthStar also details other distinctions between design positions that it contends precludes class certification. (*Id*. at 12-13). NorthStar asserts that the amount of time that any designer actually spends using CAD depends on the needs of a given project. (*Id*. at 13). Northstar also states that the umbrella term "CAD" actually encompasses multiple different types of software that different designers use in many different ways, even within the same discipline and grade, depending on the particular task and project. (*Id*. at 14). Finally, Northstar states that designers in the proposed class worked in at least two, and possibly three, different offices and had varying levels of pay. (*Id*. at 15).

The question is whether the members of Hamilton's proposed class are similarly situated. Under Fifth Circuit precedent, "[e]vidence of similar job description, duties, and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Hebert v. Technipfmc USA, Inc.*, 2021 WL 1137256, at *3 (S.D. Tex. Feb. 5, 2021) (internal citations omitted). Each potential plaintiff need not be identical in all respects; rather, the court assesses whether the potential plaintiffs are "too diverse a group to be 'similarly situated.'" *Id.* at 443.

NorthStar asserts that by asking the court to determine whether the plaintiffs are subject to an exemption under 29 U.S.C. § 213(a), Hamilton attempts to litigate the merits of the case. The court agrees that this is an issue reaching the merits, but it is also a threshold issue essential to determining collective action certification. Under *Swales*, the court must consider at the notice stage whether merits questions, such as the applicability of an exemption, could be resolved on a collective basis. *See* S*wales*, 985 F. 3d at 442.

The court finds that the application of an exemption could be resolved on a collective basis. The Employee Information Cards for Hamilton, Davis, Robberson, Giuseppetti, and Els all contain an hourly pay rate. (See Docket Nos. 39-1, 39-2, 39-4, 39-5, 39-6). As to Pizana, the plaintiffs present evidence that he negotiated an hourly rate with NorthStar. (Docket Entry No. 39-3). Citing to depositions of its employees, NorthStar rebuts this by stating that these "hourly rates" reflect only each of the opt-in plaintiffs' yearly salaries divided by the hours they worked. (Docket Entry No. 40 at 20). But to the extent that all members of the putative class were paid in this way, the question of whether a FLSA exemption is applicable could be adjudicated on a collective basis. For the purposes of this motion, the court need not resolve the merits issue of whether any exemption under § 213(a) applies.

However, the question of whether the putative class members were subject to a single compensation policy that violates the FLSA does not resolve the "similarly situated" inquiry under *Swales*. The court must also assess whether the proposed class members were also similarly situated as to their job duties and responsibilities. *See Hebert*, 2021 WL 1137256, at *3.

NorthStar contends that the existence of other differences within the proposed class—such as working in multiple offices, having different educational backgrounds, being supervised by different individuals, and holding different titles—precludes finding the putative class members to be similarly situated. NorthStar relies heavily on *Beck v. Jordan & Skala Engineers, Inc.*, in which this district court previously held that a group of design employees were not similarly situated because members of the putative class "specialized in different engineering disciplines (*i.e.*, mechanical, electrical, or plumbing), possessed a wide range of different job titles, worked across four geographically disparate offices, and reported to at least six different supervisors, each of which [] had substantial control over their job duties and maintained different expectations." 2019 WL 13255080, at *5 (S.D. Tex. Sept. 18, 2019) (Atlas, J.). In that case, the court was reviewing a motion to decertify. At the decertification stage, the court has had "the benefit of full discovery," enabling the court to make "a second and final determination, utilizing a stricter standard, about whether the named plaintiffs and opt-ins are similarly situated and may therefore proceed to trial as a collective." *Swales*, 985 F.3d at 437 (internal quotations omitted).

But here, Hamilton asks only for the issuance of notice, which is the first step in the process. For the purpose of issuing notice, post-*Swales*, district courts in this circuit have found that a class of putative plaintiffs who have "different supervisors, work on different teams, have some varying job duties, and work in different locations" but otherwise shared the same job function are similarly situated for the issuance of notice. *See Torres v. Chambers Protective Services, Inc., et al.*, 2021

8

WL 3419705, at *6 (N.D. Tex. Aug. 5, 2021); *Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 854 (S.D. Tex. 2022). In light of this precedent, the court agrees that differences in seniority, geographical location, and supervisors do not preclude the court from issuing notice. However, as in *Jordan,* here, the putative class members' specialization in different areas of design precludes a finding that all the plaintiffs are similarly situated.

Unlike the security guards in *Torres*, and the restaurant workers in *Cortez*, the CAD designers that comprise the putative class at issue are skilled workers with specialized knowledge. The class would include four types of designers, each with very different substantive knowledge, skills, and tasks. The record reflects that the putative class members used CAD software in different ways, depending on their discipline. (*See* Docket Entry No. 46 at 13:11-17). The record also shows that each designer's use of the CAD software depended on their "technical know-how," which varied based on the designer's discipline and expertise within that design field. (Docket Entry No. 39-18 at 106:16-19). And a designer in one discipline would not consider him or herself to be qualified to work as a designer in a different discipline. (See Docket Entry No. 40-3 at 51:3-5). The court finds that while the designers *within* each discipline are similarly situated to each other—regardless of their seniority, degree of education, and supervisor—the designers *across* each discipline are not similarly situated to each other.

As a result, the court denies the motion for issuance of notice to the class proposed by the plaintiffs, which encompasses designers across all four of the design disciplines identified by the parties. However, the court will consider the issuance of notice as to subclasses of NorthStar designers, based on their design discipline: piping designers, instrumentation and electrical designers, civil/structural designers, and survey designers. Hamilton must submit proposed class definitions consistent with these categories. Once the court has had a chance to review the revised

proposed definitions and the defendant's response, the court will consider whether notice should issue to all or any of the proposed narrowed sub-classes.

**IV.      Conclusion**

The motion for FLSA collective identification and notice is denied as to the class proposed by Hamilton. (Docket Entry No. 27). The court orders the plaintiffs to submit a revised proposed class definition and plan for notice consistent with the court's ruling as to sub-classes, no later than March 21, 2025.

SIGNED on February 14, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge