Case 4:23-cv-03501   Document 54   Filed on 08/06/25 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
August 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 23-3501 |
| | § | |
| NORTHSTAR ENERGY SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a wage-and-hour dispute brought as a collective action under the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The plaintiff, Mark Hamilton, moved for FLSA collective identification and issuance of notice on behalf of himself and a group of designers who used computer-aided design software to perform tasks at NorthStar Energy Services. (Docket Entry No. 27 at 2). The defendant, NorthStar, argued that the members of proposed class are not similarly situated, and that notice, and thus certification, would be improper. (Docket Entry No. 40 at 2).

The court denied the motion for issuance of notice to the class proposed by Hamilton, which encompassed designers across four different disciplines. (Docket Entry No. 48). The court found that while the designers *within* each discipline are similarly situated to each other—regardless of their seniority, degree of education, and supervisor—the designers *across* each discipline are not similarly situated to each other. (*Id*.). The court ordered Hamilton to propose definitions consistent with four separate subclasses of NorthStar designers, based on their design discipline: piping designers, instrumentation and electrical designers, civil/structural designers, and survey designers. (*Id*.).

Hamilton now proposes the following subclasses:

| Proposed Sub-Class | Title | Description |
|---|---|---|
| 1 | Piping Designer | "All current and former Piping Designer (0-IV) and Sr. Piping Designer (0-IV) employees of NorthStar Energy Services, Inc. who were, in the three (3) years preceding the filing of this lawsuit to present, paid by the hour, but were not paid 1.5x their regular rate of pay for every hour worked in excess of forty (40) hours in a work week." |
| 2 | I&E Designer | "All current and former Instrumentation & Electrical Designer (0-IV) and Sr. Instrumentation & Electrical Designer (0-IV) employees of NorthStar Energy Services, Inc. who were, in the three (3) years preceding the filing of this lawsuit to present, paid by the hour, but were not paid 1.5x their regular rate of pay for every hour worked in excess of forty (40) hours in a work week." |
| 3 | Civil Structural Designer | "All current and former Civil Structural Designer (0-IV) and Sr. Civil Structural Designer (0-IV) employees of NorthStar Energy Services, Inc. who were, in the three (3) years preceding the filing of this lawsuit to present, paid by the hour, but were not paid 1.5x their regular rate of pay for every hour worked in excess of forty (40) hours in a work week." |
| 4 | Civil Survey Designer | "All current and former Civil Survey Designer (0-IV) and Sr. Civil Survey Designer (0-IV) employees of NorthStar Energy Services, Inc. who were, in the three (3) years preceding the filing of this lawsuit to present, paid by the hour, but were not paid 1.5x their regular rate of pay for every hour worked in excess of forty (40) hours in a work week." |

(Docket Entry No. 51 at 3-4).

2

Hamilton argues that the job descriptions for the individual disciplines establish that members of each of the proposed subclasses have the same or similar job description and duties. (*Id*. at 4). He also argues that a single policy violating the FLSA—"straight time" rather than "time and a half" pay for overtime hours—applies to each of the members within the proposed subclasses. (*Id*.). If collective notice to the proposed sub-classes is permitted, Hamilton asks that the court order NorthStar to identify all potential opt-in plaintiffs within 14 days of the entry of an order granting the motion. (*Id*. at 4-5). Specifically, he asks the court to order NorthStar to produce a list identifying each person by full name, last known address, telephone number, email address, and dates and locations of employment. (*Id*.). Hamilton also asks the court to permit a 60-day opt-in period and to authorize a reminder notice to be issued after 30 days. (*Id*. at 5). Finally, Hamilton seeks permission to notify putative class members by text message in addition to notice by email and mail. (*Id*.).

NorthStar opposes certification of the subclasses, arguing that even within the proposed subclasses, differences in the designers' educational backgrounds, pay scale, seniority, and day-to-day work duties preclude collective notice to the subclasses. (Docket Entry No. 52). NorthStar also argues that collective notice to a civil/structural designer subclass is impermissible because that subclass lacks a representative. (*Id*. at 20).

NorthStar's assertions that the differences in designers' educational backgrounds, pay scale, seniority, and day-to-day work duties precludes finding that the prospective class members are similarly situated merely rehashes arguments that the court considered, and rejected, in its prior memorandum and opinion. (Document Entry No. 48). But the court agrees that Hamilton has failed to present any representative member of the proposed civil/structural subclass. In the absence of a representative, the court cannot permit collective notice to a subclass of all current or

3

former civil/structural designer employees of NorthStar. "To satisfy the third prerequisite under Rule 23(a), the typicality requirement, a plaintiff must demonstrate that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hernandez v. City of Houston, Texas*, No. 4:16-CV-3577, 2019 WL 2869157, at *3 (S.D. Tex. July 3, 2019) (citing Fed. R. Civ. P. 23(a)(3)). Because the court has already found that the putative class members are not similarly situated across the design disciplines, but only within each discipline, the absence of a civil/structural design representative precludes collective notice to that proposed subclass.

NorthStar also objects to Hamilton's proposed notice and his plan for soliciting opt-ins. (Docket Entry No. 52 at 20). It is well-established that "[t]he potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). The court takes up each of NorthStar's challenges to Hamilton's proposed notice, in turn.

First, NorthStar argues that ordering NorthStar to provide the "dates of employment" for all opt-in plaintiffs identified for the purposes of collective notice is inappropriate. (Document Entry No. 52 at 20.). NorthStar argues that this information is properly sought through discovery. (*Id*.). Hamilton fails to respond to this argument in his reply brief. The court agrees that at this juncture, ordering NorthStar to provide the dates of employment for all opt-in plaintiffs is premature. Hamilton may instead seek this information through discovery once collective notice has been issued.

Second, NorthStar raises various issues with the wording of Hamilton's proposed notice. (*Id*. at 21). NorthStar argues that Hamilton must make the following changes to the proposed notice:

4

- In the "Why am I getting this Notice" section, "alleged" must be added before "unpaid overtime wages" in the first sentence. (*Id*. at 21). The phrase "NorthStar denies any and all liability, maintains it has properly compensated its employees for all hours worked, and asserts that the designers at issue were properly classified as exempt and that NorthStar has at all times complied in good faith with the FLSA" must replace the second sentence. (*Id*. at 22).
- "[U]npaid wages" must be added at the end of the first sentence in the "What happens if I join this lawsuit?" section of the notice. (*Id*. at 21).
- "[U]npaid overtime wages" must be added in the "How long do I have to make a decision?" section of the notice. (*Id*.).
- The initial headings of the notice must be modified to indicate that the notices are being sent by counsel for Hamilton, and not by the court. (*Id*. at 21).
- "[T]o recover damages" must be removed from the introductory sentence of the notice. (*Id*. at 21-22).
- Language that explains the contingency fee agreement for Hamilton's counsel and that opt-ins risks incurring costs if the plaintiffs are unsuccessful must be added. (*Id*. at 22).

Hamilton responds that these modifications attempt to litigate the case in the notice and the content intends to dissuade opting in. (Document Entry No. 53 at 3). Hamilton argues that these modifications would confuse potential opt-in plaintiffs. (*Id*.). For the most part, the court agrees with Hamilton that these modifications to the proposed notice are unnecessary. The one exception is the modification to the initial headings. That modification must be made, indicating that the notices are being sent by counsel for Hamilton, and not by the court, to avoid any confusion or suggestion that it is the court issuing the notices.

Third, NorthStar seeks an order that would limit attorney-client communications between counsel for Hamilton and the prospective class members. (Document Entry No. 52 at 24). NorthStar provides as an example an order from *Spence v. Irving Holdings, Inc.*, 2010 WL 5609023, at *2-3 (N.D. Tex. Dec. 15, 2010). If adopted, the order would require Hamilton to provide 14 days advance notice to the defendant before sending any communication to potential class members, including disclosure of both the communication method and content, followed by

5

a seven-day period for the defendant to file objections with the court, which would then determine whether the communication is misleading, coercive, or undermines the collective action. (*Id*.). Hamilton responds that limiting attorney-client communication would exacerbate confusion created by the proposed modifications. (Document Entry No. 53 at 4).

In *Spence*, the district court found that it had discretion to "limit, bar, or permit communications between parties and their counsel and potential class members both before and after a class was conditionally certified under the FLSA." *Spence,* 2010 WL 5609023 at *1-2. But in that case, collective notice had already been approved, and there had been a history of "contentions between the parties in this case over past communications between Plaintiffs and potential litigants." *Id.* at *2-3. No such history exists here. At this juncture, the court does not find that it is necessary to place advance restrictions on Hamilton's counsel's ability to communicate with prospective class members. NorthStar may re-urge its request once the initial notices have been sent.

Fourth, NorthStar takes issue with Hamilton's plan to use online or electronic consent forms. (Document Entry No. 52 at 23). NorthStar claims that disseminating electronic consent forms increases the potential for fraud, but does not further elaborate. Hamilton fails to respond to NorthStar's arguments about the risk of fraud that could result from allowing potential opt-ins through a website rather than mail. But "[c]ourts routinely allow potential class members to opt in to FLSA collective actions with an electronic signature." *Macias v. Catapult Painting*, *LLC*, 2020 WL 6253589, at *6 (S.D. Tex. Oct. 22, 2020) (citing *Aguirre v. Tastee Kreme #2, Inc.*, No., 2017 WL 2350064, at *8 (S.D. Tex. May 31, 2017) ("[R]ecent technological advances ... have made electronic signatures trustworthy, valid, and enforceable"). The court sees no reason to prohibit electronic consent in this case.

Fifth, NorthStar asks the court to deny Hamilton's request to send reminder notices by mail and email because of the confusion to prospective plaintiffs that might result from receiving multiple notices. (Document Entry No. 52 at 23-24). NorthStar asserts that an electronic reminder notice would not help with locating potential remote or out-of-state plaintiffs because the original notice would be sent via text, email, and mail. (*Id.*). Hamilton responds that electronic notice, reminders, and consent makes it more likely that potential plaintiffs receive notice and are able to opt in. (Document Entry No. 53 at 3). Courts in this district have held that "a reminder notice is a reasonable way to see that potential class members receive notice of the action and have a chance to decide whether to participate in the case." *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 727 (S.D. Tex. 2021); *see also Dickensheets v. Arc Marine*, *LLC*, 440 F. Supp. 3d 670, 673 (S.D. Tex. 2020). The court will permit Hamilton to send reminder a reminder notice by mail and email 30 days after the initial notice is sent.

The court grants the motion for collective notice as to the proposed subclasses of piping designers, I&E designers, and civil survey designers as defined in the chart on the second page of this opinion, and in Hamilton's supplemental motion. (*See* Docket Entry No. 51 at 3-4). The court denies the motion for collective notice as to the proposed subclass of civil/structural designers. Hamilton must submit a revised proposed notice that complies with this court's order regarding the form of that notice and a revised plan to disseminate that notice by no later than August 29, 2025.

SIGNED on August 6, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge